Filed
D.C. Superior Court
07/22/2022 18:53PM
Clerk of the Court

## DISTRICT OF COLUMBIA SUPERIOR COURT
## CIVIL DIVISION

| | |
|---|---|
| Allison Reese,<br>Building 16, Unit 3149, Hawthorn Dr., NE<br>Washington, D.C. 20017<br><br>Plaintiff<br><br>v.<br><br>Park Place Condominium<br>Homeowners Association I<br>Edward Yost, Executive<br>3129 Hawthorn Drive, NE<br>Washington, DC 20017<br><br>&<br><br>MCM, Inc. (formerly Metropolis Condo<br>Management, Inc.)<br>c/o Lawrence R., Holzman, Registered<br>   Agent<br>5402 Ivy Lane, Suite 650<br>Greenbelt, MD 20770<br><br>Defendant (s) | Case No. __2022 CA 003076 B__<br>Date: July 11, 2022 |

COMES NOW Allison Reese, Plaintiff by and through her duly appointed legal counsel, Harold Boyd, Jr., and states as follows:

### I. INTRODUCTION

1. With this lawsuit, Plaintiff, Allison Reese, seeks redress for violations of the federal Fair Housing Act, 42 USC 3601 - 19, District of Columbia Condominium Act; and common law

pg. 1

**EXHIBIT B**

breach of contract based on the PPCA's multiple failures from 2014 to July 21, 2021 to (a) make available to Plaintiff the benefits and protections of the PPCHA master insurance policy identified as Policy numbers (i) 6119M28120, (ii) PPP 7453832, and (iii) 618712108,; (b) Implement, invoke or execute the benefits of the Park Place Condominium Homeowners Association PPCHA master insurance policy in a nondiscriminatory manner; (c) adhere to and follow the anti-retaliation provisions of the Fair Housing Act; and (d) make housing services or facilities available to Plaintiff in an expeditious nondiscriminatory manner. Defendant's actions and inactions violate the following statutes: *DC Code Section 2-1401.01; 42 USC 3601 – 19; and 24 C.F.R. part 100.*

## II. JURISDICTION

2. Plaintiff realleges paragraphs one as though fully set forth herein.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1337 based on Plaintiffs' claims under the Fair Housing Act, 42 USC 3601 – 19; DC Code § 42-1903.10.(e)(1) of the District of Columbia Condominium Act; and DC Code § 2-1401.01.

## III. THE PARTIES

4. Plaintiff realleges paragraphs one through three as though fully set forth herein.

5. Plaintiff is an African American female, who owns and resides in a townhome at the Park Place Condominium Association (PPCA), located in Washington, D.C. Plaintiff's address is identified as *Building 16 Unit 3149, Hawthorne Drive, Washington, DC.*

6. Plaintiff is informed and therefore alleges that on or before 1, June 2014 (PPCA) became aware of Building 16's foundation defects, which were revealed in several engineering reports.

7. On or about December 2014, Plaintiff's condo unit (3149) and other similarly situated unit owners required repairs to the foundation and interior of their units, which were severely damaged from main foundation problems. 42 U.S.C. 3605(b).

8. Plaintiff is informed and therefore alleges that Building 16's foundation is covered under PPCA's Master Insurance Policy, a policy acquired to protect the PPCA common areas and unit owners.

9. Plaintiff is informed and therefore alleges that on December 16, 2014, March 18, 2018, June 28, 2019, August 23, 2019, January 5, 2021, and July 12, 2021, Plaintiff requested repairs to the foundation and interior of her unit after the defective foundation caused severe damage.

10. Plaintiff is informed and therefore alleges that PPCA, defendant, refused to make repairs to Plaintiff's foundation and interior. 42 U.S.C. 3605(b).

11. Plaintiff is informed and therefore alleges that PPCA made foundation related repairs to condo units owned by white men and women during the same time period.

12. **THE DEFENDANTS.** Separate Defendant MCM Inc., (formerly known as Metropolis Condo Management, Inc. c/o Lawrence R. Holzman, Registered Agent, has an address of 5402 Ivy Lane, Suite 650, Greenbelt, MD 20770.

13. Separate Defendant, Park Place Condominium Association I, Edward Yost, Executive, has an address of 3129 Hawthorne Drive, NE, Washington, DC 20017.

14. To date, there are 6 (six) unnamed defendants known to Plaintiff.

## IV.   FACTUAL ALLEGATIONS

15. Plaintiff realleges paragraphs one through fourteen as though fully set forth herein.

16. Plaintiff is an aggrieved person within the meaning of 42 U.S.C. 3610 (a)(1)(A)(i) which states in relevant part: "An aggrieved person may, not later than one year after an alleged discriminatory housing practice has occurred or terminated file a complaint with the Secretary alleging such discriminatory housing practice." **42 U.S.C. 3610 (a)(1)(A)(i).**

17. Plaintiff is informed and therefore alleges that on July 12, 2021 Plaintiff made a written foundation repair request to the PPCA. The July 12, 2021 repair request was denied.

18. Plaintiff, based upon information and belief, alleges that on **July 1, 2014 to July 12, 2021** PPCA was insured under valid, effective (a) Commercial General Liability; (b) Umbrella Liability; (c) Fidelity Bond; and (d) Blanket Building policies. an effective master insurance policy made a written foundation repair request to the PPCA. The July 12, 2021 repair request was denied.

19. Plaintiff is informed and therefore alleges that on January 5, 2021 Plaintiff made a written foundation repair request to the PPCA. The January 5, 2021 repair request was denied.

20. Plaintiff is informed and therefore alleges that Plaintiff on June 28, 2019 made a repair request. The June 28, 2019 request was denied.

21. Plaintiff is informed and therefore alleges that Plaintiff on August 23, 2019 made a repair request. The August 23, 2019 request was denied.

22. Plaintiff is informed and therefore alleges that Plaintiff on May 11, 2018 made a repair request. The May 11, 2018 request was denied.

23. Plaintiff is informed and therefore alleges that Plaintiff on December 16, 2014 made a repair request. The December 16, 2014 request was denied.

24. Plaintiff filed her amended housing discrimination Complaint with the U.S. Housing and Urban Development Philadelphia Regional Office on September 23, 2021. Plaintiff filed her initial housing discrimination Complaint with the U.S. Housing and Urban Development Philadelphia Regional Office in September of 2021. Plaintiff exhausted her administrative remedies on December 23, 2021. See 42 U.S.C. 3610.

25. Plaintiff, pursuant to § 42–1903.10.(e)(1) of the District of Columbia Condominium Act, is an insured unit owner the *master insurance* policy or similar products with respect to liability that arises out of the unit owner's interest in the common elements or membership in the unit owner's association. See § 42–1903.10.(e)(1). (Park Place I Homeowners Association).

26. *NOTICE OF DEFECTIVE FOUNDATION.* Four (4) structural engineering reports, specific to Building 16, were prepared and submitted to the Association's management team: (i) *Construction Insight Inc.* on December 7, 2015; (ii) *Property Diagnostics, Inc.* on June 17, 2014; (iii) AAAction Waterproofing on March 19, 2015 ; and (iv) *the SCOVIS, PLLC* report on February 7, 2019.

27. REQUESTS TO USE MASTER INSURANCE. Plaintiff made multiple written and verbal requests for repairs to the defective foundation and the natural and probable interior unit damages caused by the foundation defects. All of Plaintiff's requests for foundation

maintenance and repair have been ignored or dismissed by the Association while other white unit owners enjoyed the benefits of timely repairs to damages caused by the defective foundation. Defendant's acts as described herein violate the antidiscrimination provisions of 42 U.S.C. 3605(b).

28. Benjamin Colbert, on June 28, 2019, dismissed Plaintiff's request to the Association for the purpose of using the Association's master insurance policy to repair the foundation and the damages to interior of Plaintiff's unit. Colbert stated: "not sure what action you are requesting the Association to take". 42 U.S.C. 3605(b).

29. Under the same or similar defective foundation facts, white unit owners were permitted to use the Association's master insurance policy for interior unit repairs for which the Association was liable. 42 U.S.C. 3605(b).

30. On May 14, 2019 Plaintiff made a specific request to the Association to use the master insurance policy to take corrective action to repair damage caused by settled water under the foundation. 42 U.S.C. 3605(b).

31. According to *The Common Elements* definition of paragraph B (ii) of the Park Place I By Laws, foundations are areas to be maintained and repaired by the Association. Various relevant construction engineering reports verify that the design of Building 16's foundation and water remediation system of Building 16 is the direct cause of settled water under Plaintiff's unit - 3149.

32. In December of 2014, Kenneth Brown, agent to Quasar Property Management and Real Estate, acknowledged the apparent responsibility of the Association with respect to Building 16's foundation and water settling hazards. With respect to the erosion under

Building 16, Kenneth Brown stated: "It looks like the Association is responsible for the remediation for this building. I hope to have some more information from the engineering tomorrow and some quotes shortly thereafter." Other agents of the Association confirmed Mr. Brown's conclusion.

33. On December 16, 2014, the Association acknowledged the defective foundation as the source of the erosion and water damages beneath the foundation of Building 16. The legal counsel to the Association provided Mr. Brown with a legal opinion concerning Building 16's foundation. The opinion stated: "If it is a structural part of the building or foundation that you are referring to, in other words, the slab underneath the floor of the unit, then it would be the association's responsibility to repair." ... The legal opinion continued: "are you asking if the Association is responsible for the corrective action as to the erosion underneath the building? If so, then answer is that the Association would be responsible because this is outside of the condo unit and affects the whole building." Based on this legal opinion from the Association's legal counsel, white unit owners interior unit repairs, but Plaintiff was excluded from the list of units requesting the same or similar repairs associated with the defective foundation. 42 U.S.C. 3605(b).

34. With respect to similarly situated white unit owners in Building 16 of Park Place I, the Association invoked the Association's master insurance policy to repair foundation damages to units where the foundation caused severe interior damage. Particularly, the Association's master insurance policy was used to repair the same or similar foundation damage to the following units: (A) 3131 (Black Female); (B) *3133 (White Male and*

Female); *(C) 3135 ( White male ); (D ) 3139 ( White Female ); (E ) 3141 ( White Male );*
*(F) 3157 ( white female ); (G) 3163 ( White Female) ; (H) 3167 ( White Male ); and (I)*
*3169 ( White Female ).* The Association allowed white unit owners use of the master policy to cover the same or similar repairs, but denied master policy coverage to Plaintiff's unit in 2018, 2019, 2020, and 2021.

35. The Association's discriminatory selective use of the master insurance policy continuous caused Plaintiff more than $600,000.00 in damages, essentially rendering Plaintiff's unit useless.

36. Similar to the white Park Place I unit owners, Plaintiff is also an intended insured person under the master insurance policy with respect to liability that arises out of the unit owner's interest in the common elements or membership in the unit owner's association pursuant to *§ 42–1903.10.(e)(1) of the District of Columbia Condominium Act.*

37. The continued deliberate omission of Plaintiff from the Association's master insurance repair process violates the federal Fair Housing Act; D.C. Condominium Act; and the adopted By laws of Park Place Condominium. To date, the Association has not provided any valid explanation for the denial of repairs to Plaintiff's unit. White unit owners were given notice of master policy insurance benefits and the insurance benefits were made available for interior unit repairs. Plaintiff as a black African American woman, who engaged in protective disclosures to designed to advance fair housing, was not given notice of insurance availability nor actual insurance benefits to repair Plaintiff's interior unit.

38. Based on discriminatory reasons that violate the federal Fair Housing Act, the Association intentionally did not start nor advance any provision of the Association's master insurance policy to repair Plaintiff's interior unit. The Association intentionally repaired the interior units of similarly situated white unit owners.

39. All relevant Park Place I units, except Plaintiff's unit, were repaired by invoking the financial insurance benefits of the Association's Master Insurance Policy that covers common areas and damages caused by common area. The Master Insurance Policy is deemed a service or facilities related to fair housing at Park Place I.

## V. CLAIMS

## UNLAWFUL HOUSING DISCRIMINATION AND RETALIATION IN VIOLATION OF (i) 42 U.S.C. 3605; (ii) 42 U.S.C. 3617 and (iii) 24 C.F.R. 100.400.

40. Plaintiff realleges paragraphs one through thirty-eight as though fully set forth herein.

41. **WHISTLEBLOWER ANTI RETALIATION.** Plaintiff served as a board member of the Park Place Association in 2015 and 2016. Plaintiff identified and reported fraud, and waste of the Association's financial resources in response to an Association audit conducted in March of 2016 by Goldklang Group CPAs, P.C.

42. The fraud, waste and abuse exposed by Plaintiff in 2015 and 2016 concerned questionable unit foreclosures advanced by specifically named Association board members. On numerous occasions, named Association board members purchased the Park Place I foreclosed units. Afterwards, the Association made repairs to the unit or units that were purchased out of various foreclosure proceedings. The foreclosure

pg. 9

pattern, policy and practice used by the named Association Board members made affordable housing less available at PPCA from 2015 to the present.

43. Plaintiff reported the fraud, waste and abuse in 2015 and 2016 because the correction of such fraud, waste and abuse maked housing opportunities more available and easier to access.

44. (PPCA), the Association, did not give Plaintiff any official notice in support of the denial of Association master insurance policy benefits. Plaintiff is informed and therefore alleges that the 2015 and 2016 protected disclosure is the real reason for the Association's adverse actions of refusing to use the Association's master insurance policy to repair the foundation under Reese's unit along with associated liability for interior damage caused by the building 16's defective foundation.

45. From 2018 to the present, Plaintiff has been punished, by the Association's board and management team, based on Plaintiff's protected disclosures made in 2015 and 2016.

46. Plaintiff is informed and therefore alleges that White male Park Place I unit owners, who did not report fraud and waste, received favorable treatment when making requests for foundation and interior unit repairs caused by the defective foundation.

47. Plaintiff is informed and therefore alleges that White female Park Place I unit owners, who did not report fraud and waste, received favorable treatment when making requests for foundation and interior unit repairs caused by the defective foundation.

48. The 2018, 2019, 2020, and 2021 denial of access to the master insurance policy is an adverse action advanced by the Park Place I Homeowner's Association (PPCA) against Plaintiff. The specific acts described herein violate and continue to violate the anti

discrimination and the anti retaliation provisions of the Fair Housing Act. See 42 U.S.C. 3605; *42 U.S.C. 3617 and 24 C.F.R. 100.400.*

49. 24 C.F.R. 100.400 *(b)* states in relevant part: "(b) It shall be unlawful to coerce, intimidate, threaten, or interfere, with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of , any right granted or protected by this part." 24 C.F.R. 100.400 *(c)* states in relevant part: "Conduct made unlawful under this section includes, but is not limited to, the following. . . .(c) (4) Intimidating or threatening any person because that person is engaging in activities designed to make other persons aware of, or encouraging such other persons to exercise, rights granted or protected by this part. See 24 CFR 100.20.; (c)(5) Retaliating against any person because that has person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act. See 24 C.F.R. 100.400; 24 CFR 100.20; and (c) (6) Retaliating against any person because that person reported a discriminatory housing to a housing provider or other authority. **24 C.F.R. 100.400.**

50. The Association's Master Insurance Policy is deemed a type of insurance acquired to protect the Association.

51. The Association's Master Insurance Policy is deemed a type of insurance acquired by PPCA to protect common areas as well as an individual unit owner such as Plaintiff. See, § 42-1903.10, District of Columbia Condominium Act.

52. The Association's Master Insurance Policy is deemed a "provision of services or facilities in connection" with the sale or rental of a dwelling and therefore is covered by the Fair Housing Act.

53. Plaintiff is currently paying and servicing a mortgage on her unit.

54. Plaintiff's unit is secured by a residential mortgage and Plaintiff's mortgagee requires that Plaintiff maintain unit insurance at all times.

55. The Association's denial of use of master insurance benefits makes it difficult for Plaintiff to repair foundation related damages for which the Association has admitted Association liability.

56. The discriminatory acts of the Association violate 42 U.S.C. 3605 (b) of the Fair Housing Act and 24 C.F.R. 100.400 *(b)* and *(c)*.

57. Insurance provides the financial assistance necessary to maintain a dwelling and thus it is reasonable to conclude that Congress intended home owners' insurance and PPCA condominium master insurance to fall within the scope of 42 USC 3605(b).

58. The master insurance policy obtained by Park Place I cannot be applied to unit owners in a discriminatory manner.

59. DC Code § 42-1903.10 of the District of Columbia Condominium Act states in relevant part: "(a) When any insurance policy has been obtained by or on behalf of the unit owners' association, written notice of the procurement thereof and of any subsequent changes therein or termination thereof shall be promptly furnished to each unit owner

by the officer required to send notices of meetings of the unit owners' association." DC Code § 42-1903.10.

60. In 2018, 2019, 2020, and 2021, the Association did not provide official notice to Plaintiff that Plaintiff's benefits under the Association's master insurance policy would be terminated.

61. Due to the Fair Housing Act violations of the Association, Plaintiff's condo unit has a number of health and environmental safety concerns due to the defective foundation and associated moisture.

62. The 2018, 2019, 2020, and 2021 denial of access to the master insurance policy is an adverse action advanced by the Park Place I Homeowner's Association against Plaintiff. The acts described herein violate and continue to violate the anti retaliation provisions of the Fair Housing Act. See *42 U.S.C. 3617 and 24 C.F.R. 100.400.*

63. The Fair Housing Act (the Act) specifically prohibits threats and intimidation during and after a covered resident's meaningful participation in the enforcement of duties and responsibilities under the Act.

64. Particularly, the anti- discrimination provisions of *24 CFR 100.20. (c )* state in relevant parts:

(c ) (4) Intimidating or threatening any person because that person is engaging in activities designed to make other persons aware of, or encouraging such other persons to exercise, rights granted or protected by this part. *See 24 CFR 100.20.;*

(c)(5) Retaliating against any person because that has person has made a complaint,

pg. 13

testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act. *See 24 C.F.R. 100.400; 24 CFR 100.20;* and (c)(6) Retaliating against any person because that person reported a discriminatory housing adverse action to a housing provider or other authority. *24 C.F.R. 100.400; 24 CFR 100.20.* *("It is retaining its records related to this matter and is keeping a record of all costs, including legal fees that is has incurred related to Ms. Reese's unfounded claims.").* See 42 U.S.C. 3617. States in relevant part: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3605 of this title." **See 42 U.S.C. 3617.**

65. The Association's Master Insurance Policy is deemed a type of insurance acquired to protect the Association and individual unit owners such as Plaintiff. *See, DC Code § 42-1903.10, District of Columbia Condominium Act. (Insurance obtained by association; notice to unit owners.).*

66. With respect to other similarly situated units in Building 16 of Park Place I, the Association invoked the Association's master insurance policy to repair damages to units where the foundation caused severe interior damage. Uncontroverted facts reveal that the Park Place I Association's master insurance policy was used to repair the same or similar foundation damage to the following units: **(A)** 3131 (Black Female); **(B)** *3133 (White Male and Female); (C) 313 ( White male ); (D) 3139 ( White Female ); (E) 3141 ( White Male ); (F) 3157 ( white female ); (G) 3163 ( White Female) ; (H) 3167 (*

*White Male ); and (l) 3169 ( White Female ).* The Association allowed white unit owners use of the master policy to cover the same or similar repairs, but denied master policy coverage to *Plaintiff's* unit in 2018, 2019, 2020, and 2021. Such denial of master policy insurance use constitutes a continuing pattern, practice and policy of discrimination against Plaintiff as a black female and who engaged in protective disclosures under Fair Housing Act. Thus, Plaintiff, on July 17, 2021, timely filed her complaint of housing discrimination pursuant to 42 U.S.C. 3610 (a)(1)(A)(i), *alleging that discriminatory housing practice had occurred and not terminated when the Association denied Plaintiff's use of master association insurance policy, but granted use of master association insurance policy to white males and females and unit owners who did not participate in reporting or filing housing discrimination complaints).* See 42 U.S.C. 3605.

67. 42 U.S.C. 3605 state in relevant part: (a) "It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin. . . . (b) As used in this section, the term "residential real estate-related transaction" means any of the following: (1) The making or purchasing of loans or providing other financial assistance – (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; . . ." See 42 U.S.C. 3605 (a) (b).

68. The Association's discriminatory master insurance policy denials, *from December 16, 2014 to July 12, 2021 and ongoing*, caused Plaintiff more than $600,000.00 in damages which included (I) deterioration of foundation and interior floor of Plaintiff's unit, (II) mental pain and suffering, and (III) exposure to harmful building environment caused by the defective foundation.

69. Similar to the white Park Place I unit owners, Plaintiff is an intended insured and beneficiary under the master insurance policy with respect to liability that arises out of the unit owner's interest in the common elements or membership in the unit owner's association. The board members of the Park Place I Association denied Plaintiff, in a discriminatory manner, the same rights and privileges of fair housing guaranteed by the Fair Housing Act and DC Code § 42-1903.10.(e)(1) of the District of Columbia Condominium Act. See 42 U.S.C. 3605.

70. When Plaintiff requested explanations regarding denials, from *December 16, 2014 to July 21, 2021 and ongoing*, the Association did not provide an adequate legitimate non discriminatory reasons for each denial of use of master policy insurance for the benefit of Plaintiff's interior unit and the defective foundation.

### VI. Request for Preliminary Injunctive Relief

Based on the relevant statutes, regulations and allegations stated herein, Plaintiff request that this court order the following relief:

(a) That the Defendant produce and provide to Plaintiff an exact true copy of the current, applicable PPCA master insurance policy document or documents;

(b) That the Defendant immediately initiate and effectively file a claim with the PPCA master insurance carrier for the specific purpose of repairing Building 16's foundation as related to Plaintiff's unit;

(c) That the Defendant immediately initiate and effectively file a claim with the PPCA master insurance carrier for the specific purpose of repairing any and all damages to the interior of Plaintiff's unit;

(d) That Defendant pay Plaintiff's $200,000.00 within 15 days for the purpose of acquiring alternative housing while foundation and interior repairs are implemented; 0

(e) That the Defendant pay the Plaintiff $600,000.00 or more to fix all associated unit damages.

(f) That Defendant pay Plaintiff's current legal fees in the amount of $21,000.00; and

(g) That Defendant be enjoined from future acts of housing discrimination as prohibited by statute, regulation, and PPCA by laws.

Date: June 28, 2022

Respectfully submitted

THE BOYD FIRM

/s/Harold L. Boyd III, Esq.
/s/Harold L. Boyd III, Esq. (D.C. Bar No. 481736)
954 Citrine Court
Odenton, MD 21113
Telephone: 240-772-1140
Email: hboyd3va@yahoo.com
*Attorney for Plaintiff*