UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLISON REESE,

           Plaintiff,

      v.

PARK PLACE CONDOMINIUM
HOMEOWNERS ASSOCIATION I,

           Defendant.

Case No. 22-cv-02660 (CRC)

## MEMORANDUM OPINION

For six years, Allison Reese and her condominium association played a game of cat and mouse. At least once a year, Reese contacted the association requesting repairs to her unit. Each time, the association dispatched contractors to investigate Reese's concerns. Reese then responded with more requests, complaints, and, ultimately, this lawsuit. Reese, who is African American, alleges that the association discriminated against her by refusing to pay for certain repairs, including through coverage under its master insurance policy, while paying for similar repairs to units owned by white residents. Now the association seeks summary judgment. Because Reese has not produced any evidence whatsoever rebutting PCCA's legitimate, non-discriminatory reason for not extending access to the master insurance policy, the Court will grant the association's motion.

**I.    Background**

The Court draws the following facts from the allegations in the Complaint, Defendant's Statement of Material Facts Not in Dispute, and Defendant's Motion for Summary Judgment. Where the facts are in dispute, the Court construes them in favor of Reese as the non-moving party.

A.  Factual Background

Plaintiff Allison Reese is an African-American woman who owns and lives in a townhome in Building 16 of Park Place Condominiums in Washington, D.C.  Notice of Removal, Ex. B ("Compl.") ¶ 5.  From December 2014 to July 2021, Reese's unit experienced problems ranging from termite and water damage to erosion that Reese attributes to a faulty foundation.  Id. ¶ 9.  Defendant Park Place Condominium Homeowners Association I ("PPCA") is the condominium association for Park Place Condominiums.  PPCA Stmt. of Material Facts Not in Dispute ("SMF") ¶ 1.  Under its bylaws, PPCA is not responsible for all property damage.  PPCA Mot. Summ. J., Ex. 1 at 2.  It is only responsible for damage that affects buildings as a whole, including foundation damage; individual owners are responsible for damage specific to their units.  Id.; see PPCA Mot. Summ. J., Ex. 18 ("PPCA Bylaws").

In 2014, a property manager for PPCA consulted an attorney regarding legal responsibility for a problem with Building 16—Reese's building—likely caused by settling and/or erosion under the building.  PPCA Summ. J. Mot., Ex. 1 at 3.  The property manager ultimately concluded that PPCA was responsible for repairing Building 16.  Id.; Compl. ¶¶ 32–33.  Reese alleges she "was excluded from the list of units requesting the same or similar repairs."  Id. ¶ 33.  She believes PPCA invoked its master insurance policy to cover repairs to the units on that list.  Id. ¶ 34.

One year later, PPCA commissioned a company to survey Building 16.  SMF ¶ 8; PPCA Mot. Summ. J., Ex. 2 at 1.  The resulting report recommended comprehensive repairs but did not find any foundational defects.  SMF ¶ 9.  Accordingly, PPCA scheduled repairs to Building 16.  Id. ¶ 8; PPCA Mot. Summ. J., Ex. 3.  There is no indication that the report or repairs excluded Reese's unit.  See generally PPCA Mot. Summ. J., Exs. 2–3.

2

In 2017, Reese contacted PPCA about a front-door leak, water leak, and possible screen-door replacement in her unit. SMF ¶ 10; PPCA Mot. Summ. J., Ex. 4, ECF No. 29-3 at 29 (page numbers designated by CM/ECF). In response, PPCA hired a contractor to inspect Reese's unit. PPCA Mot. Summ. J., Ex. 5. The contractor made some interim repairs, promised to return, and reported that the front-door leak would be addressed in a building-wide project. Id. PPCA tried to schedule follow-up work with Reese, attempting to contact her four times over one month. PPCA Mot. Summ. J., Ex. 6. When Reese finally responded, she said: "I appreciate your effort to get this completed, however rather than informing me of how many times you've tried to contact me, common curtsey [*sic*] would be to see if I'm in a position to respond." Id. Ultimately, citing a recent family emergency, she informed the property manager that "[a]t the present, my unit is the LEAST of my worries." Id.

Next, in April 2018, Reese contacted PPCA regarding a termite problem. PPCA Mot. Summ. J., Ex. 7, ECF No. 29-3 at 40 (page numbers designated by CM/ECF). Three pest inspection companies conducted inspections on Reese's unit. PPCA Mot. Summ. J., Ex. 20 at 2. One, a company retained by Reese, confirmed the presence of termites and termite damage. PPCA Mot. Summ. J., Ex. 7 at 45. A PPCA-hired company called Owl Pest Prevention concluded that it could not yet fix the termite damage because Reese's unit had "a severe moisture problem." PPCA Mot. Summ. J., Ex. 8. Owl Pest was the only company that noticed a water problem. PPCA Mot. Summ., J., Ex. 10, ECF No. 29-3 at 53 (page numbers designated by CM/ECF).

In May 2018, the PPCA property manager informed Reese that PPCA's Board had approved a proposal by another pest control company, Terminix, and asked Reese to follow up to schedule treatment. PPCA Mot. Summ. J., Ex. 10 at 54. In response, Reese informed PPCA that

3

she could not do so because Owl Pest had said that any treatment would not be effective due to her unit's water damage and accused the Board of "refusing to take on the liability regarding this issue." Id.  Because Owl Pest's inspection report was the only one that identified a water-damage issue, PPCA attempted to contact to Owl Pest three times to get more information but did not hear back. Id. at 53.  Ultimately, given the urgency of Reese's request, PPCA went ahead with Terminix. Id. at 51.  It also hired a general contractor who performed a temporary repair to allow termite treatment and pursued proposals for a permanent repair. Id.; SMF ¶ 12.  Nevertheless, Reese concluded that PPCA's actions indicated its "refusal to accept the liability [it] created[.]"  PPCA Mot. Summ. J., Ex. 10 at 52.

Later, in July 2018, Reese reached out to PPCA concerning a new termite problem. PPCA Mot. Summ. J., Ex. 13, ECF No. 29-4 at 18 (page numbers designated by CM/ECF). When PPCA informed Reese that it had scheduled Terminix to come by, Reese explained that her "walls need[ed] to be demoed and damaged wood replaced before treatment[.]" Id. at 17. PPCA responded that it would cancel the treatment until Reese conducted such repairs. Id. After considerable back and forth, PPCA requested that Reese list all the repairs she believed it should cover and any associated invoices. Id. at 9.  Reese responded almost a year later, in May 2019. Id. at 8.  She claimed that "the Board ha[d] not taken any action to accept any responsibility for the repairs[,]" attached two reports, and asked how the Board would like to proceed. Id.  PPCA once again asked for a list of repairs and invoices, but Reese again failed to provide one. Id. at 6.  Reese later explained that she "did not respond because [PPCA] referred to [her] damages as 'alleged' repairs." Id. at 5.

One of the reports Reese provided PPCA was prepared by Scovis Structural Engineers. PPCA Mot. Summ. J., Ex. 16 ("Scovis Report").  When Scovis visited Reese's unit, it did not

4

observe the insect damage Reese described. Id. at 3. Instead, Scovis examined undated photographs provided by Reese and concluded that various non-structural features should be replaced, but that there was no current evidence of structural damage. Id. at 3, 7.

In response to Reese's May 2019 email, PPCA explained that neither document established "a sufficient basis upon which the Association would take further action" and that it was once again unclear what action she wanted the Board to take. PPCA Mot. Summ. J., Ex. 17. Still unsatisfied, in October 2020, Reese, through counsel, sent an email to PPCA alleging structural damage covered under PPCA's bylaws and asked PPCA "to take responsibility and fix the damages associated with her unit." PPCA Mot. Summ. J., Ex. 20 at 2. PPCA rejected these claims as "unfounded." PPCA Mot. Summ. J., Ex. 21.

In early 2021, Reese responded that her unit's damage was "directly connected to Building 16's defective foundation" and, for the first time, asked PPCA to extend coverage under its master insurance policy. PPCA Mot. Summ. J., Ex. 22 at 2–3; SMF ¶ 4. PPCA again denied Reese's claims and explained that, regardless of whether Reese asserted a foundation defect or termite damage, it had spent a significant amount of time and resources addressing her concerns. PPCA Mot. Summ. J., Ex. 23. Moreover, it noted that "the Association's insurance policy provides coverage for casualty damage" but that Reese had not alleged a casualty event. Id. at 2. Therefore, even though PPCA would be responsible for any structural damage, it could not tap into the master insurance policy unless there was a casualty event. Id.

B.  Procedural History

Reese sued PPCA in the District of Columbia Superior Court alleging that PPCA had violated the Fair Housing Act, 42 U.S.C. § 3605, in two ways. First, she claimed that PPCA discriminated against her on the basis of race when it permitted white unit-owners to use the

master insurance policy to cover repairs but rejected her requests to do so. Compl. ¶ 27. Second, she alleged that PPCA denied her insurance requests in retaliation for her reporting Board members' misconduct. Id. ¶ 48. In September 2022, PPCA removed the case to this Court based on federal question and supplemental jurisdiction. Notice of Removal, ECF 1.

PPCA then moved to dismiss Reese's claims on the grounds that they were time barred by the applicable statute of limitations and failed to state a claim. PPCA Mot. Dismiss at 4–6. The Court granted PPCA's motion in part and denied it in part. Reese v. Park Place Condo. Homeowners Ass'n I, No. 22-cv-02660 (CRC), 2023 WL 5833678, at *7 (D.D.C. Sept. 8, 2023). It held that Reese's claims against PPCA were not time barred, that Reese failed to state a claim of retaliation, and that Reese plausibly alleged a claim of race discrimination. Id. The Court also dismissed another defendant because the claims against it were untimely. Id. at *4.

## II. Legal Standards

To prevail on a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it can affect the outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.

In considering a motion for summary judgment, the Court must resolve all factual disputes and draw "all justifiable inferences" in favor of the non-moving party. Liberty Lobby, 477 U.S. at 255; see also Mastro v. Pepco, 447 F.3d 843, 850 (D.C. Cir. 2006). But the non-

moving party's opposition must consist of more than mere allegations or denials; instead, it must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "[T]he moving party is entitled to judgment as a matter of law if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial.'" Eddington v. Dep't of Def., 35 F.4th 833, 836–37 (D.C. Cir. 2022).

### III. Analysis

The Court will grant PPCA's motion for summary judgment on Reese's race discrimination claim under 42 U.S.C. § 3605.

At the outset, the Court notes that Reese has violated Local Civil Rule 7(h)(1). That rule requires, in relevant part, that an opposition to a motion for summary judgment "be accompanied by a separate concise statement of genuine issues . . . which shall include references to the parts of the record relied on to support the statement." LCvR 7(h)(1). If a party fails to comply with this rule, then the Court may treat the party as having conceded the material facts identified in the movant's statement of facts. Oviedo v. Wash. Metro. Area Transit Auth., 948 F.3d 386, 396 (D.C. Cir. 2020); SEC v. Banner Fund Int'l, 211 F.3d 602, 616 (D.C. Cir. 2000) ("If the party opposing the motion fails to comply with this local rule, then 'the district court is under no obligation to sift through the record.'") (quoting Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 154 (D.C. Cir. 1996)). Here, Reese failed to include a separate statement of disputed issues. And while her opposition includes a "Statement of Relevant Facts," Reese Opp'n at 2, that statement does not cite once to the record and instead makes sweeping assertions about what the record purportedly shows. See, e.g., id. at 4 (claiming,

without any citations, that "[t]he record facts show that Plaintiff made multiple written and verbal requests for repairs" and that all "have been ignored or dismissed"); id. at 6 (alleging, again without any citation, that PPCA used its insurance policy to repair nine units owned by white owners). These conclusory, unsupported allegations are not enough to satisfy this Court's rules. The Court will therefore treat the facts identified in PPCA's separate statement of facts as undisputed.

Next, the Court will grant PPCA summary judgment. Ordinarily, courts in this circuit analyze FHA racial-discrimination claims under the three-step burden-shifting framework adopted by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). 2922 Sherman Ave. Tenants' Ass'n v. District of Columbia, 444 F.3d 673, 682 (D.C. Cir. 2006). But when the defendant presents legitimate, non-discriminatory reasons for the alleged discrimination at the summary judgment stage, the first step of that test—whether the plaintiff made out a prima facie case—becomes "irrelevant." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 495 (D.C. Cir. 2008). Under those circumstances, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas[.]" Id. at 494 (emphasis in original). It should focus instead on whether the defendant has produced sufficient evidence supporting its non-discriminatory reason. Id. "If the defendant meets that burden, plaintiffs may prevail by showing that the defendant's proffered reason was pretext for discrimination." 2922 Sherman Ave., 444 F.3d at 682.

Applying that framework, the Court will begin by assessing whether PPCA produced sufficient evidence for a reasonable jury to conclude that its asserted non-discriminatory reasons were the actual reasons for its alleged failures to repair Reese's unit. Finding that it has, the

8

Court will then turn to whether Reese has rebutted that justification. Because she has not, the Court will grant summary judgment to PPCA.

A. Legitimate Non-Discriminatory Reasons

The legitimate, non-discriminatory reason is the second prong of the McDonnell Douglas burden shifting framework. See Figueroa v. Pompeo, 923 F.3d 1078, 1087 (D.C. Cir. 2019) (listing four non-dispositive factors that often "come into play at the second prong"). The purpose of this prong is to "focus the issues" thus allowing the plaintiff "a full and fair opportunity to attack" the proffered explanation. Lanphear v. Prokop, 703 F.2d 1311, 1216 (D.C. Cir. 1983) (quotation marks omitted). As such, the defendant's evidence must "present a 'clear and reasonably specific explanation.'" Figueroa, 923 F.3d at 1088 (quoting Segar v. Smith, 738 F.2d 1249, 1269 n.13 (D.C. Cir. 1984)).

PPCA's first legitimate reason for denying Reese's claims is that its master insurance policy simply does not cover them. As PPCA informed Reese at the time, that policy covers only casualty events, not foundational damage. See PPCA Mot. Summ. J. Ex. 23 at 2. Reese, however, claimed only foundational and structural defects—and no casualty events. Reese also offers no evidence disputing that the policy covers only casualty events. Accordingly, PPCA has met its burden of producing evidence that it denied Reese's claims under the master insurance policy for legitimate, non-discriminatory reasons.

Reese also claims that PPCA denied her use of an unnamed other "source of funding" that PPCA "made available to other white unit owners suffering from the same foundation defect[.]" Reese Opp'n at 14. Reese claims that PPCA's bylaws obligated PPCA to use those funds to repair structural defects and alleges that it failed to do so on six different occasions from 2014 to 2021. Compl. ¶ 9. For each claim, the Court finds that PPCA has met its burden by

offering legitimate non-discriminatory reasons for the alleged denials because: (1) PPCA adequately responded to Reese's requests and (2) when it did not cover repairs, Reese failed to identify something in need of repair, such as a structural defect. The Court will address each of Reese's requests in turn.

First, as to Reese's 2014 claims, she alleges that PPCA excluded her from unit repairs while simultaneously allowing similar repairs claimed by white owners. Reese Opp'n at 4. But the record reveals that when it received notice of potential structural damage to Building 16, PPCA promptly consulted with its attorney, concluded that it was responsible for repairs, fixed the crack, and hired a structural engineer to conduct a survey of the building. PPCA Mot. Summ. J., Ex. 1 at 1, 3; PPCA Mot. Summ. J. at 13.

Not only does Reese fail to produce evidence that PPCA excluded her from repairs in 2014, but she also fails to specify or even identify a structural defect in need of repair at all. When asked in an interrogatory to "[d]escribe and identify in detail all requests" related to repairing the foundation or interior of her unit since 2014, Reese failed to do so. PPCA Mot. Summ. J., Ex. 25, ECF No. 29-4 at 73, 75 (page numbers designated by CM/ECF). Because Reese failed to identify a building-wide foundational defect, PPCA's bylaws did not require it to perform any repairs to Reese's unit. See PPCA Bylaws; see also Singer v. Univ. of Tenn. Health Scis. Ctr., No. 2:19-cv-02431, 2021 WL 3412445, at *5 (W.D. Tenn. Aug. 4, 2021) (holding that a defendant demonstrated a legitimate, non-discriminatory reason for not renewing an employee's contract where the employee "did not have the requisite educational background required by the [defendant's b]ylaws"); King v. North Amityville Fire Co., No. 19-cv-04643 (JMA) (AYS), 2023 WL 4827103, at *9 (E.D.N.Y. July 27, 2023) (finding that defendants

articulated a legitimate, non-discriminatory reason for an employee's termination where she violated the company's bylaws).

The Court turns next to Reese's 2018 repair requests involving termite damage, where she alleges that PPCA "denied or delayed master policy coverage" in violation of the FHA. Reese Opp'n at 4, 6. The problem for Reese, however, is that PPCA did everything it needed to under its bylaws by treating Reese's property for termites. When Reese first notified PPCA about the termites, it hired a pest prevention company. PPCA Mot. Summ. J., Exs. 7–8. After one of the inspectors noticed water damage that prevented him from moving forward with termite treatment, PPCA conducted a temporary repair, allowing the treatment to proceed. PPCA Mot. Summ. J., Exs. 8, 10 at 1. And when Reese reached out again in July 2018 concerning a new termite issue, PPCA hired Terminix, which found no active termites. PPCA Mot. Summ. J., Exs. 13–16. This work more than addressed the problems that Reese had identified. But Reese, still not pleased, asked PPCA to take additional steps. PPCA Mot. Summ. J., Ex. 13. When PPCA asked Reese for a list of repairs she believed PPCA was responsible for, she went silent for nearly a year. PPCA Mot. Summ. J., Exs. 13 at 9, 17 at 38–39. When she finally did respond, Reese ignored PPCA's simple request. Id. The Court cannot fault PPCA when Reese failed to provide it with information.

Next, like the 2014 repairs, Reese failed to identify a structural defect in need of repair in both 2019 and 2020, so PPCA denied both requests. PPCA Mot. Summ. J., Ex. 23. Even the report that Reese attached in support of her requests failed to identify any structural issues. See Scovis Report at 7 ("The wall framing is non-load bearing, so there does *not* appear to be a structural issue at this time[.]") (emphasis added).

Finally, PPCA denied Reese's 2021 complaint because it too failed to identify a structural defect. PPCA Mot. Summ. J., Ex. 23. Reese's final complaint alleged that the damage to her unit was "directly connected to [b]uilding 16's defective foundation, a finding confirmed by four structural engineering reports." PPCA Mot. Summ. J., Ex. 22 at 1. As for the reports, PPCA noted that they either predated its work on building 16 or, once again, failed to identify a structural defect in need of repair. PPCA Mot. Summ. J., Ex. 23; see Scovis Report at 7. Without any evidence of a structural defect, PPCA made a legitimate, non-discriminatory decision to deny Reese's claims.

In sum, the record contains ample evidence from which a jury could conclude that PPCA did everything it was required to do and that Reese failed to identify to PPCA any further defects requiring PPCA's action. Accordingly, PPCA has met its burden at the second step of McDonnell Douglas.

B. Pretext

Once the defendant establishes a legitimate non-discriminatory reason for its decision, the burden shifts back to the plaintiff who "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Reeves v. Sanderson Plumbing Prods., Inc, 530 U.S. 133, 143 (2000) (quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Plaintiffs can prove pretext through a variety of means, including offering evidence of discriminatory remarks, Dickinson v. Zanesville Metro. Hous. Auth., 975 F. Supp. 2d 863, 873–74 (S.D. Ohio 2013), suspicious timing, Wentworth v. Hedson, 493 F. Supp. 2d 559, 570 (E.D.N.Y. 2007) (collecting cases), and inconsistent explanations for the defendant's actions, Matarese v. Archstone Pentagon City, 795 F. Supp. 2d 402, 440–41 (E.D. Va. 2011).

Comparative evidence that similarly situated persons of a different race received favorable treatment may also show pretext. See Brady, 520 F.3d at 495 (exploring methods of proving pretext in the employment discrimination context). But where a plaintiff fails to submit "any evidence demonstrating that the non-discriminatory reasons articulated by [the defendant] for [the challenged decisions] were mere pretexts, summary judgment is warranted." Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., 478 F. Supp. 3d 259, 312 (D. Conn. 2020) (alterations in original) (quotation marks omitted).

Reese fails to produce any evidence from which a juror could infer that PPCA's justifications were pretextual. She first claims that her requests were ignored "while other white unit owners enjoyed benefits of timely repairs from a source of funding controlled by Defendant[,]" Reese Opp'n at 4, and that every unit except for hers were repaired under the master insurance policy, Id. at 6–7. But again, Reese has offered no evidence supporting these bald assertions. And when asked in an interrogatory to describe all facts supporting her discrimination claims, Reese responded by accusing PPCA of offering the question "to harass and waste time and resources" and provided a list of units that "[b]ased on [her] knowledge recollection and belief" were repaired. PPCA Mot. Summ. J., Ex. 25 at 73, 75. But as to those supposedly repaired units, Reese admitted that she "does not know any additional details[.]" Id. On this record, "[t]o conclude that discriminatory animus motivated the remaining claims to which [Reese] alludes to is to go far beyond reasonable inference and into the realm of unfettered speculation." Holcomb v. Powell, 433 F.3d 889, 901 (D.C. Cir. 2006).

Reese also points to "loss run" reports, which PPCA provided along with *its* motion for summary judgment, in an attempt to establish pretext. Reese Opp'n at 15; see Mot. Summ. J., Ex. 24 ("Loss Run Reports"). Loss run reports summarize all claims made against an insurance

13

policy over a specific period of time. While Reese's argument is not entirely clear, she appears to claim that those reports show that no one else received insurance payouts during the time that Reese suffered from various problems with her home. Reese Opp'n at 15. Accordingly, Reese seems to be suggesting that PPCA drew from some source of funding other than the insurance policy to pay for repairs requested by white owners. Id. at 14–15. She argues the lack of such claims on the reports suggests that PPCA covered up evidence. Id.

Reese's proposed inference, however, is unreasonable. The lack of payouts during those periods suggests that all would-be insurance claimants, to the extent there were any others besides Reese, were treated equally in that they were all denied regardless of race. Nor do other parts of the loss run reports support Reese's claims. As she admits, the reports do not identify the units for which any insurance funds were used. Reese Opp'n at 15–16; see Loss Run Reports. Accordingly, there is no way to tell from the reports that PPCA treated residents differently, let alone on the basis of race.

Moreover, Reese's arguments are little more than thinly veiled and uncorroborated accusations that PPCA acted in bad faith by hiding evidence. Reese Opp'n at 16–17. The Court will not indulge Reese's counsel's attempts to cast aspersions and make up for his own apparent lack of diligence. According to PPCA, Reese's counsel "served no interrogatories, made no requests for documents, and did not depose any witnesses." PPCA Reply at 2. It is no wonder, then, that Reese has no evidence of pretext. And because she has offered no evidence, the Court must grant summary judgment to PPCA.

### IV. Conclusion

For these reasons, the Court will grant PPCA's motion for summary judgment.  A separate order accompanies this opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>March 21, 2025</u>